# IN UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JULIE HEPPNER, ) | |
| ) | Case No. 1:21-cv-06629 |
| Plaintiff, ) | |
| v. ) | **JURY TRIAL DEMANDED** |
| ) | |
| BOARD OF EDUCATION OF THE CITY ) | |
| OF CHICAGO and MARY ERNESTI, in her ) | |
| official capacity, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

NOW COMES Plaintiff, Julie Heppner, ("Heppner"), by and through her legal counsel, Pietrucha Law Firm, LLC, complaining of the Defendants, the Board of Education of the City of Chicago ("The Board") and Mary Ernesti ("Ernesti"), and alleges and states as follows:

### NATURE OF ACTION, JURISDICTION AND VENUE

1. The present action alleges claims based on violations of 42 U.S.C § 1983 ("Section 1983"), the Civil Rights Act of 1871, the Due Process Clause of the Fourteenth Amendment United States Constitution, and 775 ILCS 5 ("Illinois Human Rights Act").

2. This matter arises under federal law, and this Court therefore has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

3. Additionally, this Court has jurisdiction over pendent state claims of Heppner against Defendant The Board.

4. Venue is proper in the Northern District of Illinois because all relevant actions occurred within this district.

## PARTIES

5. Plaintiff Heppner, is a light-skinned female perceived as Caucasian, and is a former employee of The Board.

6. The Board is a local governmental agency of Chicago, Illinois and the third largest school district in the United States of America. The Board is responsible for the governance, organizational and financial oversight of Chicago Public Schools ("CPS").

7. Ernesti, was at all relevant times, employed by The Board as Director of Employee Engagement.

## FACTS COMMON TO ALL COUNTS

8. For about three years, Heppner was a long-term substitute teacher for The Board. She began working as a substitute teacher on December 1, 2016, and she worked during the 2016-17, 2017-18, and 2018-19 school years.

9. On February 12, 2019, Heppner began working as a Temporarily Assigned Teacher ("TAT") at Lionel Hampton Fine Arts School, covering for an African-American teacher on maternity leave until on or around April 9, 2019 ("Maternity Leave Assignment").

10. After the regular teacher returned from maternity leave, the Maternity Leave Assignment ended, and Heppner continued her work as a substitute teacher.

11. During the Maternity Leave Assignment, Heppner frequently complained that the classroom was racially hostile and that the predominantly African-American students called her a "white bitch", refused to listen to Heppner's instructions and also whined that Heppner was white, when students preferred a black teacher.

12. On March 21, 2019, Heppner saw that a fight was about to break out between two students in the classroom, one with a strap and the other with a yardstick. Heppner called security, who advised her that they were too busy to intervene, but that the office would call the students' parents.

13. That same evening, Heppner sent the Assistant Principal an email documenting the classroom misconduct.

14. The next day, March 22, 2019, Heppner sent a follow-up email to the school's Principal. Meanwhile, "Student N" appeared in-person at the school's office with her father, who claimed that Heppner had made an inappropriate racial slur about African-American students, including his African-American daughter.

15. Heppner denied the allegations and told school administrators she was not even aware of alleged racial slang word she was accused of using.

16. Nonetheless, the Board allowed three students to submit written statements accusing Heppner of making a racial slur about African-American students.

17. On April 2, 2019, The Board wrote Heppner a letter indicating the need for an investigatory conference, to be convened on April 24, 2019, "…based on an allegation that, on March 21, 2019, while working…you made inappropriate comments to students…" ("Investigatory Conference").

18. On April 24, 2019, Heppner appeared for an Investigatory Conference before The Board's Office of Employee Engagement, accompanied by a Chicago Teachers' Union ("CTU") representative, who advised Heppner that she had never seen an employee win at an Investigatory Conference.

19. After the Investigatory Conference, Heppner continued working for the Board until around 11:30 a.m. on May 9, 2019.

20. On May 9, 2019, while at work, Heppner contacted The Board's substitute center and legal department regarding issues accessing time and attendance systems. Someone in legal revealed that Heppner needed to leave work early and check her hardcopy mail at home.

21. Heppner clocked out early around 11:30 a.m., went home and saw that a letter from The Board's Office of Employee Engagement, signed by Ernesti and dated May 6, 2019, had arrived in her mailbox terminating her employment "effective immediately" and that she was placed on a "do not hire" list.

22. Before Heppner found out about her own termination, The Board made sure to provide a third party with Heppner's discipline records as indicated in The Board's letter dated May 7, 2019.

23. The Board's Investigatory Conference report alleged that Heppner had falsified her statement about the fight between the students because none of the three students had mentioned the fight in their written statements, and also determined that the students' accounts were credible.

24. However, previously, the Board made it clear that Heppner was meeting work expectations when just days before termination the Board invited Heppner to a formal job fair to seek permanent employment with The Board.

25. After sudden separation, Heppner followed up multiple times with Ernesti, protesting her employment separation and requesting the alleged discipline records, and on August 15, 2019 Ernesti responded, claiming in part there was "no formal investigation".

26. Heppner attempted to appeal the job separation on or around June 8, 2019 and sent Ernesti a series of inquiries for many months, most of which were ignored.

27. As a result of The Board's adverse actions, Heppner was forced to change careers and she is no longer a teacher. She has also lost out on pension benefits.

## COUNT ONE
## (Against All Defendants)

**Denial of Plaintiff's Property Rights Without Due Process in violation of 42 U.S.C. § 1983, the Civil Rights Act of 1871 and the Due Process Clause of the Fourteenth Amendment United States Constitution**

28. Heppner repeats and realleges paragraphs 1 through 27 hereof, as if fully set forth herein.

29. Heppner is a licensed teacher who had a reasonable expectation of continued employment.

30. Heppner thus had a right, prior to termination of employment, to due process including but not limited to a true Investigatory Conference.

31. Instead, The Board and Ernesti, acting under color of state law, deprived Heppner of her constitutional rights and acted intentionally and/or with callous disregard for Heppner's established constitutional rights by making a decision about Heppner's continued employment either prior to the Investigatory Conference or by disregarding the information presented at the Investigatory Conference.

32. In light of the rights and expectations given to Heppner, Heppner has a liberty and property interest in her expectation of continued employment.

33. Defendants are policy makers and thus directly responsible for their unconstitutional actions in denying Heppner her due process rights.

34. By discharging Heppner in disregard of her constitutional rights to due process, Defendants have willfully and intentionally denied Heppner her constitutional rights to due process of law.

35. Further, by discharging Heppner, Defendants knew that and/or showed reckless disregard for the matter of whether its conduct violated Heppner's constitutional rights.

36. As a result of the unlawful and willful acts complained of herein, Heppner has suffered loss of employment, wages, benefits, and other damages.

## COUNT TWO
## (Against Defendant The Board)

### Race Discrimination – Hostile Work Environment
### in Violation of The Illinois Human Rights Act

37. Heppner repeats and realleges paragraphs 1 through 36 hereof, as if fully set forth herein.

38. During her employment, The Board subjected Heppner to objectively offensive comments based on Heppner's perceived race, white.

39. The harassing and offensive conduct, committed in front of Heppner's students and co-workers, was severe and pervasive so as to alter the terms and conditions of Heppner's employment.

40. The Board then made discriminatory decisions about Heppner's discipline and job termination based on her race.

41. The Board intentionally violated Heppner's rights under the Illinois Human Rights Act, with malice or reckless indifference.

42. Heppner suffered damages as a result of The Board's unlawful discriminatory actions, including but not limited to emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

43. As a direct and proximate result of The Board's unlawful employment practices, namely the creation of a hostile work environment based on race, Heppner has suffered the

indignity of discrimination, the invasion of her right to be free from discrimination and great humiliation.

## COUNT THREE
## (Against Defendant The Board)

### Color Discrimination – Hostile Work Environment
### in Violation of The Illinois Human Rights Act

44. Heppner repeats and realleges paragraphs 1 through 43 hereof, as if fully set forth herein.

45. During her employment, The Board subjected Heppner to objectively offensive comments based on Heppner's skin color, a light complexion.

46. The harassing and offensive conduct, committed in front of Heppner's students and co-workers, was severe and pervasive so as to alter the terms and conditions of Heppner's employment.

47. The Board then made discriminatory decisions about Heppner's discipline and job termination based on her color.

48. The Board intentionally violated Heppner's rights under the Illinois Human Rights Act, with malice or reckless indifference.

49. Heppner suffered damages as a result of The Board's unlawful discriminatory actions, including but not limited to emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

50. As a direct and proximate result of The Board's unlawful employment practices, namely the creation of a hostile work environment based on color, Heppner has suffered the indignity of discrimination, the invasion of her right to be free from discrimination and great humiliation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment as follows:

A. Accept jurisdiction over this matter;

B. Award Plaintiff for her past and future loss of wages and benefits, plus interest;

C. Order Defendants to reinstate Plaintiff to a position comparable to her former position or, in lieu of reinstatement, award her front pay (including benefits);

D. Award to Plaintiff liquidated damages incurred in connection with this action, equal to the sum amount of backpay and interest;

E. Award to Plaintiff all costs and reasonable attorneys' fees incurred in connection with this action;

F. Award to Plaintiff compensatory damages;

G. Award to Plaintiff punitive damages; and

H. Grant Plaintiff such additional or alternative relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims properly triable by a jury.

Dated: December 12, 2021

Respectfully submitted:

PIETRUCHA LAW FIRM, LLC

*/s/ Cynthia N. Pietrucha*
Cynthia N. Pietrucha
Attorney for Plaintiff

Pietrucha Law Firm, LLC
1717 N. Naper Blvd., Suite 200
Naperville, Illinois 60563
cpietrucha@pietruchalaw.com
(630) 344-6370